IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
HELENA DIVISION

| | |
|---|---|
| ANDREW DAVID CONNER,<br><br>Plaintiff,<br><br>vs.<br><br>WARDEN LEROY KIRKEGARD, et al.,<br><br>Defendants. | CV 15-00081-H-DLC-JTJ<br><br>ORDER AND FINDINGS AND RECOMMENDATIONS OF UNITED STATES MAGISTRATE JUDGE |

Plaintiff Andrew Conner, an inmate proceeding in forma pauperis and without counsel, filed a Complaint pursuant to 42 U.S.C. § 1983 alleging Defendants were deliberately indifferent to his safety when they sprayed him with OC spray even though he has asthma. Defendants Garrett Kent, Josh Sweeney, Samuel Short, Officer Cates, Daniel Fosness, and Sergeant Dawn Phillpott move for summary judgment arguing that Mr. Conner failed to exhaust the grievance procedure at Montana State Prison (MSP) with regard to the claims he asserts against them. (Doc. 18.) Having considered the parties' arguments and submissions, the Court finds that Defendants have not met their burden of demonstrating that administrative remedies were available and that Mr. Conner failed to properly utilize those remedies with regard to his claims. The motion for summary judgment should be denied.

1

Mr. Conner filed a motion for appointment of counsel, which will be denied. (Doc. 26.)

## I. SUMMARY JUDGMENT STANDARD

The Ninth Circuit in *Albino v. Baca*, 747 F.3d 1162 (9th Cir. 2014) (en banc), held that the proper procedural device for determining whether administrative remedies have been exhausted is a motion for summary judgment. *Id.* at 1168. Summary judgment is appropriate if there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a). The party moving for summary judgment has the initial burden of showing there is no genuine issue of material fact. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). If the moving party makes a prima facie showing that summary judgment is appropriate, the burden shifts to the opposing party to show the existence of a genuine issue of material fact. *Id.* On summary judgment, all inferences should be drawn in the light most favorable to the party opposing summary judgment. *Id*. at 159.

A fact is material if it might affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*.

By notice provided July 13, 2016 (Doc. 21.), Mr. Conner was advised of the requirements for opposing a motion brought pursuant to Rule 56 of the Federal Rules of Civil Procedure. *See Rand v. Rowland*, 154 F.3d 952, 957 (9th Cir. 1998) (en banc); *Klingele v. Eikenberry*, 849 F.2d 409 (9th Cir. 1988).

## II. ALLEGATIONS

Mr. Conner alleges he is asthmatic and his Eighth Amendment rights were violated when he was sprayed by IPS Security Team members during a cell extraction on January 30, 2015. (Amd. Cmplt., Doc. 9 at 4.) He alleges that Defendants Sweeney, Kent, Short, Cales and Fossness (members of the IPS security team) are liable for not properly extracting and subduing an asthmatic offender. He alleges Defendants Kirkegard, Woods, Shaw, Barclay, and Phillpott are liable for failing to properly train and/or supervise the IPS security team.

## III. FACTS

The Montana Department of Corrections implemented the grievance process in 1997. The process is codified in the Montana State Prison Operational Procedures as MSP Procedure § 3.3.3. (Defendants Statement of Undisputed Facts (SUF); Doc. 20 at ¶ 1 citing Cobban Affidavit, Doc. 28-1 at ¶ 7.) Pursuant to MSP Procedure 3.3.3(III)(B)(1), an inmate may grieve "issues including, but not limited to, health care, staff conduct, written policy or procedures, and other standard

3

grievance matters such as property, mail, food service, conditions of confinement, program access, or religious issues. . . ." (SUF, Doc. 20 at ¶ 2 citing Cobban Aff., Doc. 28-1 at ¶ 8.)

As the initial step of the grievance process, an inmate must file an informal grievance with his unit manager or designee within five working days of the act or omission that led to the complaint. (SUF, Doc. 20 at ¶ 3 citing Cobban Aff., Doc. 28-1 at ¶ 9.) The unit manager or designee, who receives the inmate's grievance, then has 20 working days in which to respond to the inmate's informal grievance. (SUF, Doc. 20 at ¶ 4 citing Cobban Aff., Doc. 28-1 at ¶ 10.) If the response to the inmate's informal grievance is a denial, the inmate has five working days to file a formal grievance. (SUF, Doc. 20 at ¶ 5 citing Cobban Aff., Doc. 28-1 at ¶ 11.) If the inmate has not received a response to his informal grievance within 25 days after the date he filed his informal grievance, the inmate may advance his grievance to the formal level by filing a formal grievance on the appropriate form. (SUF, Doc. 20 at ¶ 6 citing Cobban Aff., Doc. 28-1 at ¶ 12.) If the inmate does not file a formal grievance within the specified time period, then his grievance is considered abandoned. (SUF, Doc. 20 at ¶ 7 citing Cobban Aff., Doc. 28-1 at ¶ 13.)

When filing a grievance, the inmate must complete the grievance form with

all requested identifying information, and legibly and clearly state the issue in the space provided on the form. (SUF, Doc. 20 at ¶ 8 citing Cobban Aff., Doc. 28-1 at ¶ 14.) The inmate grievance form instructs the inmate to include the following information to properly submit a grievance:

> Describe the problem. Include the date and time the incident occurred, names of staff involved, description of any evidence, names of any witnesses. Name the person(s) you are grieving. WHAT did they do? WHEN did they do it? WHERE did this happen? & WHAT have you done so far to get the problem repaired?

(SUF, Doc. 20 at ¶ 9 citing Cobban Aff., Doc. 28-1 at ¶ 15.) If an inmate fails to name a MSP staff member or raise issue in a grievance, then he will be considered to have forfeited his opportunity to exhaust his administrative remedies against that official or on that issue. (SUF, Doc. 20 at ¶ 11 citing Cobban Aff., Doc. 28-1 at ¶ 17.)

Upon their arrival at MSP, all inmates must attend an orientation on MSP and DOC policies and procedures. (SUF, Doc. 20 at ¶ 12 citing Cobban Aff., Doc. 28-1 at ¶ 18.) On December 23, 2014, after Mr. Conner completed orientation on the various MSP procedures, Mr. Conner signed an acknowledgment that he had attended the orientation. (SUF, Doc. 20 at ¶ 13 citing Cobban Aff., Doc. 28-1 at ¶ 19.) Mr. Conner specifically acknowledged that MSP staff had explained to him, and answered any questions that he had in relation to, the MSP grievance process.

5

(SUF, Doc. 20 at ¶ 14 citing Cobban Aff., Doc. 28-1 at ¶ 20.) On or about January 30, 2015, Mr. Conner was involved in a cell extraction which was conducted by the IPS Team. (Amd. Cmplt., Doc. 9 at 4.)

On March 5, 2015, Mr. Conner submitted an informal grievance in relation to this incident, wherein he stated:

> I am grieving Warden Kirkegard, Assoc. Warden Woods (Security director), Robert Shaw (MDIU Unit Manger), and Toni Barclay (MDIU case manager) for failing to properly train and supervise the IPS security team that sprayed me with OC gas (pepper spray or mace) on or about 1/29/15, that has to date caused me serious pain from migraine headaches and breathing problems that stems from me being an asthmatic inmate on inhalers, also my lungs still burn to date as a result of same. . . . Also as a result of this callous disregard for my health welfare and personal security I have suffered asthma attacks and a constant sore throat. And staff ignored the fact that I have asthma when they insisted on spraying me in the face.

(Doc. 28-1 at 27.) The relief requested was, "that I receive all the names of the personel that were on IPS duty the date of above named insident. I want to know why no one told the IPS team that I was an asthmatic inmate with asthma." *Id.*

The response dated March 13, 2015 stated:

> IM Conner you had multiple chances to avoid being extracted but you refused multiple reasonable direct orders to cuff up. After being exposed to the OC spray you were decontaminated and assessed by medical and provided your inhaler. In the future do not put yourself in this type of situation. IPS members: SSG Sweeney, C/O Kent, C/O Short, C/O Cales and C/O Fossness.

6

(Doc. 28-1 at 27.)

On March 20, 2015, Mr. Conner filed a formal grievance stating:

> I am grieving Warden Kirkegard, Assoc. Warden Woods (Security director), Robert Shaw (MDIU Unit Manger), Toni Barclay (MDIU case manager) for failing to properly train and supervise the IPS security team that sprayed me with OC gas (pepper spray or mace) on or about 1/29/15. I am an asthmatic inmate with inhalers, and prison staff here in knowing same, assaulted me with a life-threatening weapon by spraying me knowing that I have asthma. . . .

(Doc. 28-1 at 28.) The relief requested was: "I want to know why no one informed IPS that I was asthmatic." *Id.* The response dated April 7, 2015 indicated: "Seen by medical on 3/17/15 evaluation completed respiratory. Mr. Conner[,] I encourage you not to put yourself in situations where pepper spray needs to be used for security. Your medical records note you have asthma." *Id.*

Mr. Conner appealed to the Warden on April 16, 2015, stating:

> The response to me grieving (Warden Kirkegard, Assistane [sic] Warden Woods, Robert Shaw, & Toni Barclay) for failure to train and supervise the IPS security team/officers that sprayed me with pepper spray/mace on 1-29-15, is unacceptable, as it does not address the facts nor the issues of my grievance. I have asthma, they knew or should have known this from my medical records. The fact that my life was endangered and I have suffered permanent injury as a result for the callous disregard of my health, welfare, and personal safety, that has subjected me to the unnecessary wanton treatment, all in violation of my protected rights under the 8th Amendment of the U.S. Constitution, is unexcusable and must be addressed & answered. This imposes need for judicial intervention.

7

(Doc. 28-1 at 29.) The May 15, 2015 response stated: "Mr. Conner–Sometimes the need for a security response overrides other concerns. After the incident, you were seen by medical. There is no indication of permanent injury. You are monitored on a regular basis and are receiving medications and treatment." *Id.*

Mr. Conner appealed to the Corrections Division on May 23, 2015 stating:

> I am appealing my Warden level grievance do to the fact there should be no reason any need for "security response" should override health concerns. Just the same as you can't taze a person who has seizures, or what if I was allergic to the chemical compound in the pepper spray. As for as medical injuries: to this day I am having nightmares about being pepper sprayed; I wake up in night sweats with shortness of breath and my lungs burning. So tell me again there is no permanent injury. I'm also still afraid of any and all cops. As for "medications" I am not properly medicated for my mental issues now including nightmares. I am on the same medication for asthma I've been on since entering Montana State Prison. All the responses up to now have included false information and zero facts I have suffered mentally and physically after this incident. You are liable!!!!

(Doc. 28-1 at 30.) The response dated June 24, 2015 stated:

> I have received your grievance dated May 23, 2015. I am denying your grievance. You are currently being provided treatment and are being monitored on a regular basis by a provider.
>
> Please contact the infirmary if you have any further medical concerns. I would also encourage you to contact Mental Health Services to help address the other concerns you describe in your grievance and ask them for assistance as well.

(Doc. 2-1 at 10.)

## IV. **DISCUSSION**

The Prison Litigation Reform Act ("PLRA")'s exhaustion requirement states:

> [n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a); *see also Porter v. Nussle*, 534 U.S. 516, 524-25 (2002); *Booth v. Churner*, 532 U.S. 731, 741 (2001). This means a prisoner must "complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a precondition to bringing suit in federal court." *Woodford v. Ngo*, 548 U.S. 81, 88 (2006). Exhaustion is mandatory. *Booth v. Churner,* 532 U.S. 731, 741 (2001); *Jones v. Bock*, 549 U.S. 199, 211 (2007). Under the PLRA, prison regulations define the exhaustion requirements. *Jones*, 549 U.S. at 218.

The defendant bears the ultimate burden of proving failure to exhaust. *See Brown v. Valoff*, 422 F.3d 926, 936 (9th Cir. 2005). If the defendant initially shows that (1) an available administrative remedy existed and (2) the prisoner failed to exhaust that remedy, then the burden of production shifts to the plaintiff to bring forth evidence "showing that there is something in his particular case that

9

made the existing and generally available administrative remedies effectively unavailable to him." *Albino*, 747 F.3d at 1172. Once the defendant has carried that burden, the prisoner must produce evidence demonstrating that "the local remedies were ineffective, unobtainable, unduly prolonged, inadequate, or obviously futile." *Williams v. Paramo*, 775 F.3d 1182, 1191 (9th Cir. 2015) (internal citations and quotation marks omitted).

"The ordinary meaning of the word 'available' is 'capable of use for the accomplishment of a purpose,' and that which 'is accessible or may be obtained.' " *Ross v. Blake*, __ U.S. __, 136 S.Ct. 1850, 1858 (June 6, 2016), *citing Booth*, 532 U.S., at 737–38. Therefore, inmates must exhaust those "grievance procedures that are 'capable of use' to obtain 'some relief for the action complained of.' " *Id*. at 1859, *quoting Booth*, 532 U.S. at 738.

There are three general situations that can render a prison or jail grievance process unavailable to an inmate. First, an administrative procedure is not available, and therefore need not be exhausted "when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Ross*, __ U.S. at __, 136 S.Ct. at 1859.

Second, "an administrative scheme might be so opaque that it becomes,

practically speaking, incapable of use. In this situation, some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it." *Id*. "When rules are so confusing that no reasonable prisoner can use them, then they're no longer available." *Id*. (internal quotation marks and alteration omitted).

Finally, administrative remedies will be deemed unavailable if "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation" or if administrators otherwise interfere with an inmate's pursuit of relief. *Id*. at 1860. For example, if the prison improperly processed an inmate's grievance, if prison officials misinformed an inmate regarding grievance procedures, or if the inmate "did not have access to the necessary grievance forms within the prison's time limits for filing the grievance," the remedies will be considered unavailable. *Albino*, 747 F.3d at 1172-73; *see also McBride v. Lopez*, 807 F.3d 982, 987 (9th Cir. 2015) (holding that an inmate's fear of retaliation may suffice to render the grievance process unavailable, if the prisoner (1) "provide[s] a basis for the court to find that he actually believed prison officials would retaliate against him if he filed a grievance," and (2) "demonstrate[s] that his belief was objectively reasonable").

Despite Defendants' arguments, the Court finds this case to be very similar to *Reyes v. Smith*, 810 F.3d 654 (9th Cir. 2016). In *Reyes*, the defendants argued

11

that Reyes' suit was barred under the PLRA exhaustion requirement because his grievance related on its face to only one of the named defendants and not all. In rejecting this argument, the Ninth Circuit held,

> Under the PLRA, a grievance suffices if it alerts the prison to the nature of the wrong for which redress is sought. The grievance need not include legal terminology or legal theories, because the primary purpose of a grievance is to alert the prison to a problem and facilitate its resolution, not to lay groundwork for litigation. The grievance process is only required to alert prison officials to a problem, not to provide personal notice to a particular official that he may be sued.

*Reyes*, 810 F.3d at 659 (internal citations and quotations omitted).

Like in *Reyes*, prison officials could easily identify the IPS Team's involvement in the issue and denied several of Mr. Conner's grievances on the grounds that the IPS Team was acting properly. Mr. Conner clearly indicated that he felt the IPS Team had acted inappropriately in his grievance. For example, he stated, "staff ignored the fact that I have asthma when they insisted on spraying me in the face." (March 5, 2015 informal, Doc. 28-1 at 27.) He stated, "I am an asthmatic inmate with inhalers, and prison staff here in knowing same, assaulted me with a life-threatening weapon by spraying me knowing that I have asthma." (March 20, 2015 grievance, Doc. 28-1 at 28.) The responses to both of these grievances addressed the merits of the extraction and the use of OC spray.

Mr. Conner's grievance was sufficient to "alert[ ] the prison to the nature of

the wrong for which redress is sought" and provide sufficient information "to allow prison officials to take appropriate responsive measures." *Griffin v. Arpaio*, 557 F.3d 1117, 1120, 1121 (9th Cir. 2009) (quotation marks omitted).

The motion for summary judgment should be denied.

**V.     MOTION FOR APPOINTMENT OF COUNSEL**

No one, including incarcerated prisoners, has a constitutional right to be represented by appointed counsel when they file a civil lawsuit under 42 U.S.C. § 1983. *Rand v. Rowland*, 113 F.3d 1520, 1525 (9th Cir. 1997), *withdrawn on other grounds*, 154 F.3d 952, 962 (9th Cir. 1998). Unlike criminal cases, a judge cannot order a lawyer to represent a plaintiff in a § 1983 lawsuit–a judge can merely request a lawyer to do so. 28 U.S.C. § 1915(e)(1); *Mallard v. United States Dist. Court*, 490 U.S. 296, 310 (1989). Further, a judge may only request counsel for an indigent plaintiff under "exceptional circumstances." 28 U.S.C. § 1915(e)(1); *Terrell v. Brewer*, 935 F.2d 1015, 1017 (9th Cir. 1991).

> A finding of exceptional circumstances requires an evaluation of both 'the likelihood of success on the merits and the ability of the petitioner to articulate his claims pro se in light of the complexity of the legal issues involved.' Neither of these factors is dispositive and both must be viewed together before reaching a decision.

*Terrell*, 935 F.2d at 1017 (citing *Wilborn v. Escalderon*, 789 F.2d 1328, 1331 (9th Cir. 1986) (citations omitted). Mr. Conner does not meet this criteria.

13

Many indigent plaintiffs might fare better if represented by counsel, particularly in more complex areas such as discovery and the securing of expert testimony. However, this is not the test. *Rand*, 113 F.3d at 1525. Plaintiffs representing themselves, or "pro se litigants," are rarely able to research and investigate facts easily. This alone does not deem a case complex. *See Wilborn*, 789 F.2d at 1331. Factual disputes, and thus anticipated examination of witnesses at trial, does not establish exceptional circumstances supporting an appointment of counsel. *Rand*, 113 F.3d at 1525.

Mr. Conner argues he is not able to afford counsel, he will be able to make meaningful and effective arguments without counsel, counsel would be better suited to present evidence and cross-examine witnesses at trial, he only completed the eighth grade, and he has been unable to obtain counsel. (Doc. 26 at 1-2.)

These allegations are insufficient to make a showing of exceptional circumstances. Mr. Conner has not demonstrated a likelihood of success on the merits or his inability to articulate his claims pro se. The Court will not appoint counsel at this point in the litigation.

Based upon the foregoing, the Court issues the following:

**ORDER**

Mr. Conner's Motion for Appointment of Counsel (Doc. 26) is **DENIED**.

Further, the Court issues the following

## RECOMMENDATIONS

Defendants' Motion for Summary Judgment (Doc. 18) should be **DENIED**.

## NOTICE OF RIGHT TO OBJECT TO FINDINGS & RECOMMENDATIONS AND CONSEQUENCES OF FAILURE TO OBJECT

The parties may file objections to these Findings and Recommendations within fourteen (14) days after service (mailing) hereof.[1] 28 U.S.C. § 636. Failure to timely file written objections may bar a de novo determination by the district judge and/or waive the right to appeal.

This order is not immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Fed.R.App.P. 4(a), should not be filed until entry of the District Court's final judgment.

DATED this 5th day of October, 2016.

/s/ John Johnston
John Johnston
United States Magistrate

---

[1] As this deadline allows a party to act after the Findings and Recommendations is "served," it falls under Fed.R.Civ.P. 6(d). Therefore, three (3) days are added after the period would otherwise expire.