FILED

FEB 12 2018

Clerk, U.S Courts
District Of Montana
Missoula Division

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
HELENA DIVISION

| | |
|---|---|
| ANDREW DAVID CONNER,<br><br>Plaintiff,<br><br>vs.<br><br>WARDEN LEROY KIRKEGARD, et al.,<br><br>Defendants. | CV 15–81–H–DLC–JTJ<br><br><br><br>ORDER |

United States Magistrate Judge John T. Johnston entered his Findings and Recommendations in this case on October 16, 2017, recommending Plaintiff Andrew David Conner's ("Conner") Complaint be dismissed because there is no genuine dispute of material fact and the Inner Perimeter Security ("IPS") Defendants did not use excessive force on January 30, 2015. (Doc. 77.) Judge Johnston further recommended Defendants' Motions for Summary Judgment be granted. (Docs. 64, 66.) Conner timely filed an objection to the Findings and Recommendations. (Doc. 80.) Thus, Conner is entitled to a de novo review of those findings and recommendations to which he has "properly objected to." Fed. R. Civ. P. 72(b)(3); *see also* 28 U.S.C. § 636(b)(1)(C).

The portions of the findings and recommendations not specifically objected to will be reviewed for clear error. *See McDonnell Douglas Corp. v. Commodore Bus. Mach., Inc.*, 656 F.2d 1309, 1313 (9th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140, 149 (1985). Clear error exists if the Court is left with a "definite and firm conviction that a mistake has been committed." *McMillan v. United States*, 112 F.3d 1040, 1044 (9th Cir. 1997) (citations omitted).

"A party makes a proper objection by identifying the parts of the magistrate's disposition that the party finds objectionable and presenting legal argument and supporting authority, such that the district court is able to identify the issues and the reasons supporting a contrary result." *Montana Shooting Sports Ass'n v. Holder*, 2010 WL 4102940, at *2 (D. Mont. Oct. 18, 2010). "It is not sufficient for the objecting party to merely restate arguments made before the magistrate or to incorporate those arguments by reference." *Id.* Congress created magistrate judges to provide district judges "additional assistance in dealing with a caseload that was increasing far more rapidly than the number of judgeships." *Thomas*, 474 U.S. at 153.

There is no benefit to the judiciary "if the district court[] is required to review the entire matter de novo because the objecting party merely repeats the arguments rejected by the magistrate. In such situations, this Court follows other courts that have overruled the objections without analysis." *Hagberg v. Astrue*,

2009 WL 3386595, at *1 (D. Mont. Oct. 14, 2009). In short, an objection to a magistrate's findings and recommendations "is not a vehicle for the losing party to relitigate its case." *Id.*

The Court finds that Conner's objections generally attempt to rehash arguments already raised in Conner's Amended Complaint. However, the Court will analyze Conner's remaining objections under a de novo review. For the reasons explained below, the Court adopts Judge Johnston's Findings and Recommendations in full.

## PROCEDURAL BACKGROUND

Conner is an inmate at the Montana State Prison ("MSP"). Conner filed a Complaint pursuant to 42 U.S.C. § 1983 against Defendants Leroy Kirkegard, Thomas Wood, Robert Shaw, Toni Barclay, Dawn Phillpott, Daniel Fossness, Garrett Kent, Joshua Sweeney, Mitchell Cales, and Samuel Short alleging Defendants used excessive force when they utilized OC spray during a cell extraction even though Conner has asthma. (Doc. 2.) Defendants filed motions for summary judgment arguing there are no genuine issues of material fact regarding Conner's allegations and that they are entitled to judgment as a matter of law. (Docs. 64, 66.) On August 4, 2017, the Court notified Conner of the requirements for opposing a motion brought pursuant to Rule 56 of the Federal Rules of Civil Procedure. (Docs. 69; 70.) Conner responded on September 21, 2017, arguing

that Defendants violated his constitutional rights by utilizing OC spray during his cell extraction. (Doc. 73.) Judge Johnston entered Findings and Recommendations on October 16, 2017, recommending that Defendants' Motions for Summary Judgment be granted. (Doc. 77.)

Conner filed objections to Judge Johnston's Findings and Recommendations on November 6, 2017. (Doc. 80.) Conner submitted nine objections, arguing that: (1) his mental health issues were not acknowledged; (2) it was deliberately indifferent for the IPS Defendants to apply OC spray to him due to his mental illness; (3) the IPS Defendants threatened to harm him on the way to locked housing; (4) he is unknowledgeable of the law and therefore cannot properly raise triable issues; (5) he has asked for counsel on several occasions due to being unknowledgeable of the law; (6) he asserts he complied with the IPS Defendants' orders to "cuff up" before they pepper sprayed him; (7) Defendants had access to his mental and medical files at any given time; (8) the IPS Defendants would have had knowledge of his asthma had IPS followed policy and procedure and called medical to clear him; and (9) MSP Registered Nurse Bruce Squires admitted he did not recall any call to clear him for use of OC spray. (*Id.*)

Defendants filed a Reply to Conner's objections, arguing that: (1) Conner did not comply with the Federal Rules of Criminal Procedure and the District of Montana Local Rules in filing his objections because he did not cite to the

-4-

magistrate's findings and recommendations to which he objects, did not arrange to transcribe any of the record, did not identify the record evidence he relies on to contradict each finding to which he objects, and did not set forth the authority he relies on to contradict each recommendation; and (2) Conner's objections are without merit as Conner has cited no evidence contradicting Judge Johnston's legal findings. (Doc. 81.)

## LEGAL STANDARD

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Under summary judgment, "[t]he moving party initially bears the burden of proving the absence of a genuine issue of material fact." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (*citing Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). Summary judgment should be entered, "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. If the party moving for summary judgment meets its initial responsibility, the burden shifts to the nonmovant to demonstrate the existence of a factual dispute, that the fact in contention is material, and that the dispute is genuine. *Id.* at 323–24.

To demonstrate the existence of a factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. *See* Fed. R. Civ. P. 56(c)(1); *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 n.11 (1986). The nonmoving party need not establish a material issue of fact conclusively in its favor. *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288 (1968). However, the nonmoving party must "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita*, 475 U.S. at 586 (internal citation omitted); *accord* Fed. R. Civ. P. 56(c)(1). "In evaluating the evidence to determine whether there is a genuine issue of fact," the court draws "all inferences supported by the evidence in favor of the non-moving party." *Walls v. Cent. Costa Cnty. Transit Auth.*, 653 F.3d 963, 966 (9th Cir. 2011). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586 (citations omitted).

A party who wishes to object to the magistrate judge's findings and recommendations may serve and file specific written objections. Fed. R. Crim. P 59(b)(2). "Unless the district judge directs otherwise, the objecting party must promptly arrange for transcribing the record, or whatever portions of it the parties

agree to or the magistrate judge considers sufficient. Failure to object in accordance with this rule waives a party's right to review." *Id.* The District of Montana Local Rule 59.2(a) additionally provides that an objection to a magistrate judge's findings and recommendations must itemize:

> (1) each factual finding of the magistrate judge to which objection is made, identifying the evidence in the record the party relies on to contradict that finding; and (2) each recommendation of the magistrate judge to which objection is made, setting forth the authority the party relies on to contradict that recommendation.

## DISCUSSION

### I. Factual Summations

Conner has been an inmate at MSP since December 11, 2014. On January 30, 2015, while preparing for the 1:00 p.m. count, Defendant Phillpott heard Conner kicking his cell door and yelling. Conner told Phillpott he wanted his property. Phillpott told Conner she was unable to get Conner's property because the staff was preparing for count. Phillpott told Conner to use his milk carton until she could provide him with a cup after count was complete. Conner continued to kick and punch his cell door.

Phillpott then ordered Conner to "cuff up" three times. Conner did not comply with Phillpott's orders. Phillpott called command post and requested the IPS team conduct a cell extraction because of Conner's aggressive behavior and failure to comply. Lieutenant Larry Lakel determined force was necessary to

prevent injury to Conner and his cellmate, to maintain security, and because Conner had refused several orders. Lakel called the IPS team and ordered them to conduct a cell extraction. Lakel also called the infirmary and received medical clearance for the use of OC spray during the cell extraction. Lakel then informed the IPS team that Conner and his cellmate were medically cleared for OC spray.

Conner proceeded to block his cell door with mattresses, began flooding his cell, made toilet paper wads and stuck them to the window, and threw butter and other canteen items around his cell. When the IPS team initially arrived, Conner and his cellmate covered their faces and bodies with clothing to obstruct a taser or OC spray. Defendant Sweeney ordered Conner and his cellmate to "cuff up." Neither inmate complied with Sweeney's order. The IPS team then left briefly to put on their protective gear and prepare for a cell extraction. At approximately 1:10 p.m., the IPS team entered Conner's cell block to perform an extraction. When the IPS team approached Conner's cell, Conner yelled, "Fuck you." Sweeney again ordered both inmates to "cuff up." Conner said, "You want us to cuff up?" then shook his fist and again yelled, "Fuck you."

The MSP Use of Force Procedure defines the "Use of Force Control Continuum" as "the application of progressive levels of force to gain control of an inmate, starting with passive counter measures up to and including deadly force. Use of force will be limited to the amount to force necessary to control the

situation." Attached to MSP Procedure 3.1.8 is the DOC Control Continuum ("Continuum"), which outlines the continuum of force in order of level of force. The Continuum specifically states "[s]taff may enter the continuum at any level that represents a reasonable response to the perceived threat posed by the subject." In addition, MSP Procedure No. 3.1.8A provides that OC spray may be used to "assist in controlling an acting out inmate."

"Empty-handed" techniques were unavailable to the IPS Defendants because they had to conduct a cell extraction where two inmates were in the cell. Sweeney moved to the next available step in the Continuum by administering OC spray. Once Conner's cell slot was cleared, Sweeney sprayed four short bursts of OC into the cell: Sweeney sprayed one short burst at Conner, one short burst at his cellmate, and two short bursts in the air. Sweeney then ordered both inmates to lay face down on the ground. Both inmates complied with Sweeney's order. The IPS team then entered Conner's cell with little force and restrained both inmates. Once Conner was secured, Defendants Short and Kent removed him from his cell.

Conner was escorted to the showers to rinse the OC spray off his face and body. Immediately after being decontaminated in the shower, Conner was assessed by MSP Registered Nurse Bruce Squires. Conner was treated by Squires less than four minutes after Sweeney sprayed the first burst of OC into Conner's cell. Conner complained of an asthma attack, so Squires grabbed an albuterol

inhaler and administered two puffs to Conner. Conner himself indicated the inhaler stopped his alleged asthma attack. Squires noted Conner's discomfort was relatively mild. After observing no serious medical issues, Squires cleared Conner to go to locked housing. Once Conner was cleared by medical staff, Short and Kent escorted Conner to locked housing.

Neither Phillpott nor any of the IPS Defendants were aware Conner had asthma until after the extraction took place. Pursuant to the Health Insurance Portability and Accountability Act ("HIPPA"), MSP staff who are not employed by MSP medical are not allowed to view or learn about an inmate's medical history unless the inmate tells them that information himself. Conner never informed Phillpott nor any of the IPS Defendants that he had asthma until after Sweeney administered the OC spray.

## II. Conner's Objections

### a. OC Spray Use and Mental Health

Judge Johnston found that Conner failed to show the IPS Defendants' use of OC spray during the cell extraction amounted to excessive force. In order to succeed on a claim for the use of excessive force in violation of the Eighth Amendment, Conner must show the Defendants applied force "maliciously and sadistically to cause harm," rather than in a good-faith effort to maintain or restore discipline. *Hudson v. McMillian*, 503 U.S. 1, 6–7 (1992). Not every malevolent

touch by a prison guard gives rise to a federal cause of action; the Eighth Amendment's prohibition of cruel and unusual punishment necessarily excludes from constitutional recognition de minimis uses of physical force. *Id.* at 9–10. Guards may use force only in proportion to the need for it in each situation. *Spain v. Procunier*, 600 F.2d 189, 195 (9th Cir. 1979).

The Court agrees with Judge Johnston's conclusion that Conner has failed to show the IPS Defendants applied force "maliciously and sadistically to cause harm," rather than in a good-faith effort to maintain or restore discipline. (Doc. 77 at 14–15.) The Defendants presented undisputed evidence force was required because Conner and his cellmate refused their orders, flooded their cell, and placed items in front of their cell door. (*Id.* at 15.) The use of OC spray was a minimal use of force in the Continuum. (*Id.*) Additionally, Conner has failed to produce evidence with his objections demonstrating that any Defendant was deliberately indifferent to a substantial risk of harm to his health or safety as alleged. Based upon the Defendants' undisputed evidence and the video of the incident, Judge Johnston correctly concluded the IPS Defendants' use of OC spray on Conner was appropriate. (Doc. 77 at 15–16.)

Judge Johnston also properly addressed Conner's mental health issues in his legal findings. Conner previously raised his mental health as an issue in his Amended Complaint and Motion for Order of Examination. (Docs. 9-2 at 1; 44 at

1.) However, Judge Johnston correctly found that the IPS Defendants' use of OC spray on Conner was an appropriate minimal use of force given Conner's behavior. (Doc. 77 at 15–16.) Conner violated prison rules, created a dangerous situation, was noncompliant, and failed to produce evidence that any Defendant was deliberately indifferent to a substantial risk of harm to his health or safety. (*Id.*) Therefore, the IPS Defendants' use of OC spray, despite Conner's mental health, did not violate his constitutional rights. (*Id.* at 17.)

Further, Conner's objections based on the OC spray use and his mental health fail to present any new legal argument and do not comply with District of Montana Local Rule 59.2 by identifying the specific evidence in the record to contradict Judge Johnston's factual findings. Nor did Conner identify legal authority to contradict Judge Johnston's recommendations. Conner's objections based on these grounds are generally rehashed arguments of the same allegations made in his Amended Complaint and do not merit further analysis.

### b. Conner's Asthma, Medical File Access, and RN Squires

Judge Johnston found that Conner failed to show evidence Defendants knew Conner was asthmatic prior to the use of OC spray during the cell extraction. The Eighth Amendment protects prisoners from inhumane conditions of confinement and is violated when prison officials act with deliberate indifference to a substantial risk of harm to an inmate's health or safety. *Farmer v. Brennan,*

511 U.S. 825, 828, 833 (1994). Courts, however, must accord prison administrators wide-ranging deference in the adoption and execution of policies and practices to further institutional order and security. *Bell v. Wolfish*, 441 U.S. 520, 547 (1979); *Jeffers v. Gomez*, 267 F.3d 895, 917 (9th Cir. 2001).

The Court agrees with Judge Johnston's conclusion that Conner has failed to establish that he informed the officers he was asthmatic prior to the use of OC spray. (Doc. 77 at 16.) The undisputed evidence shows the MSP staff followed policy and received medical clearance for the use of OC spray on Conner. (*Id.*) The IPS Defendants were also told Conner and his cellmate were medically cleared for OC spray prior to the cell extraction. (*Id.*) The IPS Defendants would not have any way of knowing he was asthmatic because HIPPA prohibits MSP staff who are not employed by MSP medical to view or learn about an inmate's medical history unless the inmate tells them that information. Conner's objections fail to produce any new evidence to suggest any Defendant was deliberately indifferent to a substantial risk of harm to Conner's health or safety regarding his asthma or medical clearance. Instead, the Defendants properly followed the policies in place to medically clear him for OC spray use. (*Id.* at 17.)

Further, Conner's objections based on his asthma, medical file access, and RN Squires fail to present any new legal argument, do not comply with District of Montana Local Rule 59.2, and are generally rehashed arguments of the same

allegations made in his Amended Complaint. Therefore, the Court finds these objections are without merit.

### c. Cell Extraction

Judge Johnston concluded, and this Court agrees, that Conner has failed to show evidence that the IPS Defendants' use of force during the cell extraction was excessive given Conner's failure to comply with the IPS Defendants' orders. Conner alleged in his Amended Complaint and objections he was compliant when ordered to "cuff up" by the IPS Defendants. (Docs. 9-2 at 1; 80 at 2.) However, Judge Johnston properly concluded that video of the cell extraction incident disputes Conner's allegations. (Doc. 77 at 15.) Conner wrapped his face in a towel to thwart OC spray. (*Id.*) Conner then proceeded to respond aggressively to the IPS Defendants' orders to "cuff up" after being asked multiple times before raising his fist and cursing at the IPS Defendants. (*Id.*) Additionally, Conner had already flooded his cell and placed items in front of his cell door. (*Id.*) Therefore, Conner's refusal to comply warranted the IPS Defendants' use of force during the cell extraction.

Conner's objection based on the cell extraction largely reiterates the same facts and arguments already made and correctly rejected by Judge Johnston. Conner's objection fails to present new legal argument, does not comply with

District of Montana Local Rule 59.2, is merely rehashed argument of the same allegations made in his Amended Complaint, and does not merit further analysis.

### d. IPS Threat, Triable Issues, Request for Counsel

Conner's objections regarding an alleged threat by the IPS Defendants while being escorted to locked housing, his lack of knowledge of the legal system, and his request for counsel fail to make legal objections. Judge Johnston found that the Defendants presented undisputed evidence that Conner was escorted by Defendants Short and Kent to locked housing without incident. (Doc. 77 at 12–13.) Additionally, the Court was aware of Conner's lack of knowledge of the legal system given his three previous requests for counsel. (Docs. 26; 48; 62.) The Court denied Conner's previous requests because he did not demonstrate the "exceptional circumstances" needed for appointment of counsel, failed to show a likelihood of success on the merits, and did not show his inability to articulate his claims pro se. (Docs. 35 at 13–14; 50 at 2; 63 at 1.)

Instead, these objections reiterate facts and arguments already made and correctly rejected by Judge Johnston in his legal findings, do not comply with District of Montana Local Rule 59.2, and rehash arguments made in Conner's Amended Complaint and previous motions. Accordingly, the Court finds these objections are without merit.

Thus, the Court agrees with Judge Johnston's legal findings that Defendants' Motions for Summary Judgment should be granted and that dismissal is appropriate because there is no genuine dispute as to any material fact and the IPS Defendants did not use excessive force. Having further reviewed the Findings and Recommendations for clear error, and finding none,

IT IS ORDERED that Judge Johnston's Findings and Recommendations (Doc. 77) are ADOPTED IN FULL. Defendants' Motions for Summary Judgment (Docs. 64, 66) is GRANTED and this matter DISMISSED. The Clerk of Court should be directed to close the case and enter judgment in favor of Defendants pursuant to Rule 58 of the Federal Rules of Civil Procedure.

IT IS FURTHER ORDERED the Clerk of Court should be directed to have the docket reflect that the Court certifies pursuant to Rule 24(a)(3)(A) of the Federal Rules of Appellate Procedure that any appeal of this decision would not be taken in good faith. No reasonable person could suppose an appeal would have merit.

DATED this 12th day of February, 2018.

_____
Dana L. Christensen, Chief Judge
United States District Court